# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2839

_____

Ricky Wayne Forsyth,　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant,　　　　　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　*　Southern District of Iowa.
John Ault II, Warden,　　　　　　　　*
Anamosa State Penitentiary,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee.　　　　　　　*

_____

Submitted:  April 15, 2008
Filed:  August 8, 2008

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Ricky Wayne Forsyth was convicted by an Iowa jury in April 1994 of first-degree murder for the deaths of his estranged wife, his three children, and two children of his wife's boyfriend. His conviction was affirmed on direct appeal. Iowa v. Forsyth, 547 N.W.2d 883 (Iowa Ct. App. 1996). On appeal from the denial of Forsyth's application for post-conviction relief, the Iowa Court of Appeals rejected his claim that he had been denied the effective assistance of counsel by reason of counsel's failure to adequately argue that Forsyth was not competent to stand trial and by raising a factual defense rather than one based on insanity or diminished responsibility. The court also rejected Forsyth's claim that his appellate counsel was

ineffective for failing to raise these issues on appeal. Forsyth v. Iowa, No. 03-1378, 2004 WL 1161614 (Iowa Ct. App. May 26, 2004). Having exhausted his remedies under Iowa law, he filed suit in federal district court for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that the performances of his trial counsel and appellate counsel were so inadequate that they deprived him of his Sixth Amendment right to counsel. Forsyth now appeals from the district court's[1] denial of his requested relief. We affirm.

## I. Background

On June 14, 1993, Forsyth was found lying on the floor of his wife's bedroom, with the bodies of his wife and their three children lying on the bed therein. He had gunshot wounds to his head and wrist. Forsyth now suffers from amnesia and cannot remember much of what occurred on June 13-15, including any events related to the murders.

Dr. William Robert McMordie, a clinical neuropsychologist, interviewed Forsyth four times in June and July of 1993, altogether spending about seven and one-half hours with him. Dr. McMordie informed trial counsel that, in his professional opinion, Forsyth was competent to stand trial and that Dr. McMordie's evaluation of Forsyth did not support an insanity defense.

Dr. Loren Olson, a psychiatrist, saw Forsyth on about ten occasions while he was still in the hospital following the murders and before he was indicted. Dr. Olson testified that Forsyth understood the gravity of his legal situation. Dr. Olson also stated that if a defendant is amnesic for the events surrounding an alleged crime, it is impossible to determine whether he understood the nature and quality of his actions

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

or whether he had the mental capacity to know the difference between right and wrong.

Dr. Mark Souza, a psychiatrist, stated that Forsyth's amnesia was real and would prevent him from testifying about the events of June 14, 1993. Dr. Souza also testified that Forsyth was aware of his legal circumstances and that Dr. Souza knew of no impairment to Forsyth's ability to communicate with his counsel other than the amnesia. Dr. Souza stated that he could not form an opinion to a reasonable degree of medical certainty about possible conditions of insanity or diminished responsibility because Forsyth had no memory of his mental state regarding the events of June 14, 1993, and because the other available evidence of Forsyth's state of mind was insufficient to form the basis of an opinion regarding those matters.

Dr. Michael Taylor, a psychiatrist retained by the state, evaluated Forsyth on October 8, 1993. It was his opinion that Forsyth was not suffering from any type of mental disease or defect at the time of the murders and that he was capable of distinguishing between right and wrong at that time. Although Dr. Taylor did not directly communicate his opinions to trial counsel before Forsyth's trial, trial counsel assumed from the fact that the state did not call him to testify at the competency hearing that Dr. Taylor agreed that Forsyth was competent to stand trial.

Dr. William S. Logan, a forensic psychiatrist, interviewed Forsyth for about six hours on October 5, 2001, and reviewed a number of documents related to the trial and some other documents possibly relevant to Forsyth's psychological state. He opined that Forsyth was not competent to stand trial. He further opined that Forsyth suffered from a major depressive disorder complicated by psychotic features at the time of the murders and that this mental disease prevented him from being able to tell the difference between right and wrong or to appreciate the nature and quality of his conduct.

Prior to the murders, Forsyth had had extensive contact with psychological professionals. A psychological report completed following the murders indicated that Forsyth had received psychotherapy since 1977 for anger and violent impulses, marital and family problems, and general depression. It is unclear how regular Forsyth's visits were in the 1980s, but after his youngest son died in a bicycle accident in 1990, he was placed on an anti-depressant medication, in addition to receiving ongoing counseling. After Forsyth pleaded guilty to assaulting his sixteen-year-old son with a paddle in 1991, the school board asked Dr. Taylor to evaluate whether Forsyth should be reinstated as a bus driver. Dr. Taylor reported no evidence of any psychiatric disorder and recommended that Forsyth be reinstated. The psychologist that Forsyth was seeing noted in December 1992 that Forsyth had been chronically depressed for at least one year. Forsyth completed a Minnesota Multiphasic Personality Inventory (MMPI II) test in May 1993, apparently in connection with impending divorce and custody proceedings. The results were evaluated by two psychologists, one in 1993 and one in 2003, both of whom said that the results were not consistent with either major depressive disorder or any other major psychiatric illness.

As recounted earlier, the Iowa Court of Appeals rejected the claims raised in Forsyth's appeals from the denial of post-conviction relief. In the present proceeding, the district court held that the Iowa court had not unreasonably applied any federal law, nor had it unreasonably found any facts in light of the evidence before it. Forsyth v. Ault, No. 4-04-CV-00567-REL (S.D. Iowa July 30, 2007).

## II. Discussion

We review a district court's conclusions of law *de novo* and its findings of fact for clear error. Malcom v. Houston, 518 F.3d 624, 626 (8th Cir. 2008).

A state prisoner is entitled to a writ of habeas corpus from a federal court only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, the state court's decision must be objectively unreasonable, and not merely incorrect, for us to grant the writ. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). We presume that the state court's findings of fact are correct, and the prisoner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A defendant's Sixth Amendment right to counsel is violated if counsel's performance was so inadequate that the resulting breakdown in the adversarial process undermines confidence in the result of the proceeding. Bell v. Cone, 535 U.S. 685, 695 (2002). Counsel's performance is constitutionally deficient if it is objectively unreasonable and results in actual prejudice. Malcom, 518 F.3d at 626. Prejudice exists only if there is a reasonable probability that the outcome would have been different had counsel's performance been adequate. Id. There is a strong presumption that counsel's strategic choices were reasonable. McGurk v. Stenberg, 163 F.3d 470, 473 (8th Cir. 1998).

## A. Competency to Stand Trial

Forsyth argues that his trial counsel was constitutionally ineffective for failing to argue adequately that he was incompetent to stand trial. A defendant is incompetent to stand trial if he is unable to understand the charges he faces and the consequences involved or he is unable to communicate with counsel "with a reasonable degree of rational understanding." Cooper v. Oklahoma, 517 U.S. 348, 354 (1996). A defendant is presumed competent and bears the burden of proving otherwise. Iowa v. Rieflin, 558 N.W.2d 149, 152 (Iowa 1996); see Cooper, 517 U.S. at 355 (noting that such rules are not proscribed by the Constitution).

Trial counsel's primary argument at Forsyth's trial-competency hearing was that Forsyth's amnesia rendered him unable to assist in his own defense. At Forsyth's post-conviction relief hearing, trial counsel testified that the mental health experts were asked generally about Forsyth's competency and that they focused on his amnesia as bearing on that question. Despite the expert testimony that Forsyth's amnesia was real, amnesia alone is not sufficient under Iowa law to establish incompetency to stand trial. See Iowa v. Emerson, 375 N.W.2d 256, 261 (Iowa 1985). Accordingly, the Iowa court rejected Forsyth's claim.

Forsyth now contends that trial counsel was ineffective for failing to argue that Forsyth's delusion that his family was still alive rendered him incompetent to stand trial. Evidence of Forsyth's delusions was actually before the Iowa court, however, and based on the evidence available to trial counsel, there was no reason to emphasize Forsyth's delusions. At the post-conviction relief hearing, trial counsel stated that:

> [I]n my personal dealings with Rick, there was never any indication of the type of delusional thinking [that he demonstrated] at the time he was in the hospital. It was also explained to me that with the passage of time, the healing, those symptoms would go away, and they did. He was aware that his wife and children were dead all the time I dealt with him.

J.A. at 712-13. The testimony of the mental health professionals who examined Forsyth support trial counsel's statement that the delusions faded with time. Dr. Olson testified that while he was in the hospital, Forsyth initially believed that his family was not dead, but that as time progressed he began to speak more about the reality of the situation. Dr. McMordie testified that Forsyth was at times delusional that his family was still alive, but that at other times he accepted the reality of the situation. Dr. McMordie stated this kind of confusion is not unusual following a head injury. Dr. Taylor testified that during his interview with Forsyth in October 1993, Forsyth expressed no delusional thinking and was well aware that his family was

dead.  The picture presented by this testimony indicates that there was no need for trial counsel to conduct any further inquiry into the matter of Forsyth's initial delusions.

Notwithstanding Forsyth's claim of ongoing delusions, the Iowa Court of Appeals held that any argument that Forsyth was incompetent to stand trial by reason of another mental defect would have been futile.  Forsyth v. Iowa, No. 03-1378, 2004 WL 1161614, at *3 (Iowa Ct. App. May 26, 2004).  As indicated above, Forsyth was examined in varying degrees by a psychologist and three psychiatrists.  Although Drs. McMordie, Olson, and Souza believed that Forsyth's amnesia was real, neither they nor Dr. Taylor expressed any belief that Forsyth was mentally unable to comprehend his legal situation or to communicate rationally with his counsel.  Drs. McMordie and Taylor specifically opined that Forsyth was competent to stand trial, while both Dr. Olson and Dr. Souza believed that he understood his legal situation.  None of these mental health professionals pointed to Forsyth's delusions as being of importance with respect to his competence to stand trial.

That Forsyth was able in 2001 to obtain a psychiatrist, Dr. Logan, who was willing to testify that Forsyth was unable to understand the nature of the proceedings against him or to rationally communicate with his counsel does not make trial counsel's conduct unreasonable.  See Marcrum v. Luebbers, 509 F.3d 489, 511 (8th Cir. 2007).   Trial counsel is not required by the Sixth Amendment to continue shopping for a psychiatrist until a favorable opinion is obtained.  Id.  Further, given the weight of psychiatric opinion on Forsyth's competence, Dr. Logan's testimony is unlikely to have swayed the trial court even if he had testified at the competency hearing.  In light of trial counsel's own observations and the above-described expert opinions, trial counsel was not objectively unreasonable in choosing not to argue that Forsyth's initial delusions rendered him incompetent to stand trial.  Accordingly, the district court did not err by finding that the Iowa courts' rulings were not unreasonable regarding either the facts or the applicable federal law.

## B. Mental Defect Defenses

Forsyth argues that his trial counsel was constitutionally inadequate because he failed to reasonably investigate and present the insanity and the diminished responsibility defenses.

The Iowa Court of Appeals held that trial counsel's "investigative conclusions were consistent with the relevant expert opinions available at the time counsel made this strategic decision [to not pursue the insanity and the diminished responsibility defenses]." Forsyth v. Iowa, No. 03-1378, 2004 WL 1161614, at *3. Trial counsel's strategic decisions are "virtually unchallengeable unless they are based on deficient investigation, in which case the 'presumption of sound trial strategy . . . founders on the rocks of ignorance.'" Link v. Luebbers, 469 F.3d 1197, 1204 (8th Cir. 2006) (quoting White v. Roper, 416 F.3d 728, 732 (8th Cir. 2005)) (omission in original). One of trial counsel's strategic decisions is that of "reasonably deciding when to cut off further investigation." Winfield v. Roper, 460 F.3d 1026, 1034 (8th Cir. 2006).

Trial counsel had several reasons for choosing to pursue a defense of factual innocence and not an insanity defense. First, he believed that there was sufficient evidence to create a reasonable doubt regarding Forsyth's guilt. The exculpatory evidence included a blood stain that did not match any victim or Forsyth, a medical examiner's testimony that the physical evidence suggested that one person could not have committed all the murders, a tape-recorded conversation in which Mrs. Forsyth's boyfriend (and the father of the two non-Forsyth children who were murdered) told his ex-wife that he had killed their children, and an initial claim by Mrs. Forsyth's brother, who discovered the bodies, that he had shot Forsyth and had been shot in the leg in return. Trial counsel testified that Forsyth was adamant that he could not have killed his family and that Forsyth did not want to utilize a defense based upon an admission that he had committed the murders but had been insane at the time. Additionally, none of the mental health professionals who had interviewed Forsyth

expressed an opinion that Forsyth was legally insane at the time of the murders. See Marcrum, 509 F.3d at 511 ("The very fact that [the psychologist's] interpretation of the record was consistent with [the state psychiatrist's] would have given [trial counsel] every reason to believe that both experts were making a correct analysis of the medical records."). Trial counsel spoke with persons who knew Forsyth well, none of whom believed Forsyth had suffered from a mental disease or defect prior to the murders. Further, the MMPI II test completed shortly before the murders did not indicate that Forsyth suffered from any major psychological disorders. Finally, trial counsel had had many years of experience in the area of criminal defense and was aware that insanity defenses are rarely successful in the best of circumstances, and that such a defense in Forsyth's case would not be, given the existing expert opinion on the issue. Trial counsel noted that pursuing alternative defenses claiming that, "I did not do it, but if I did I was insane," can have the disadvantage of appearing to concede the factual innocence claim.

Forsyth argues that trial counsel's failure to investigate the insanity and the diminished responsibility defenses rendered his choice not to raise these defenses uninformed and perforce unreasonable. We have held, however, that "[w]here counsel has obtained the assistance of a qualified expert on the issue of the defendant's sanity and nothing has happened that should have alerted counsel to any reason why the expert's advice was inadequate, counsel has no obligation to shop for a better opinion." Marcrum, 509 F.3d at 511. Forsyth asserts that the experts who examined him lacked the requisite training to assist him because they were clinical, not forensic, mental health experts. Forsyth presents neither a factual basis for differentiating categorically between clinical and forensic psychiatrists or psychologists nor any legal authority for this proposition.

The defense of diminished responsibility permits the defendant to offer proof that he lacked the mental capacity to form the specific intent to commit the crime charged. See Iowa v. Gramenz, 126 N.W.2d 285, 287-90 (Iowa 1964). Trial counsel

was not ineffective in investigating this defense, because even Dr. Logan, Forsyth's expert on appeal, stated that Forsyth did not lack that capacity.

In light of the experts' opinions and the results of the May 2003, MMPI II test, there is no basis to hold that trial counsel's investigation of possible mental illness defenses was constitutionally inadequate. Accordingly, trial counsel was not objectively unreasonable in not pursuing further inquiry into possible mental defect defenses. Forsyth has not overcome the presumption of adequacy and reasonableness applied to trial counsel's strategic decisions, and the district court thus did not err in finding that the state court's decision was not unreasonable regarding either the facts or the federal law.

Because Forsyth has alleged no grounds in support of his claim of ineffective assistance of his appellate counsel beyond those alleged against his trial counsel, that claim likewise fails.

The judgment is affirmed.

_____