# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3845

_____

John Patrick Murphy,      *
       *
     Appellant,      *
       *   Appeal from the United States
     v.      *   District Court for the
       *   District of Minnesota.
John King, Warden, M.C.F. - Stillwater; *
Lori Swanson, Attorney General for      *
the State of Minnesota,      *
       *
     Appellees.      *

_____

Submitted: June 15, 2011
Filed: August 29, 2011

_____

Before COLLOTON, CLEVENGER,[1] and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

After his conviction in the Minnesota courts, John Patrick Murphy moved for federal habeas relief under 28 U.S.C. § 2254. The district court [2] denied relief, but granted a certificate of appealability on whether Murphy's sentence violates the

_____

[1]The Honorable Raymond C. Clevenger, III, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

[2]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Eighth Amendment's prohibition of cruel and unusual punishments. Having jurisdiction under 28 U.S.C. §§ 1291 and 2253, this court affirms.

I.

In 1994, Murphy was charged in two separate complaints with 35 counts of making terroristic threats, conspiracy to commit terroristic threats, criminal damage to property, and burglary. In what the prosecution termed a "campaign of terror" from 1978 to 1993, Murphy—a frequent criminal defendant—harassed, terrorized, and retaliated against a range of people in the criminal justice system—judges, prosecutors, witnesses, co-defendants, police officers, halfway-house employees, and both state and federal probation employees. *See State v. Murphy*, 545 N.W.2d 909, 912-13 (Minn. 1996). He placed dead animals and animal parts—of birds, cats, rabbits, deer, and squirrels—at victims' houses; planted fake bombs; dumped oil and blood on houses; spray-painted obscenities such as "slut whore," "slut bitch," and "fag, queer, homo," as well as messages like "I'll come back" on houses and garages. *Id.* He punctured over 150 tires, broke car windows, "keyed" or scratched cars, and damaged car interiors. *Id.* His tactics also included cutting telephone wires; throwing rocks, bricks, concrete, beer cans, and other objects through windows; egging houses and garages; placing broken beer bottles in front of a garage; and calling in fictitious pizza orders and placing fictitious want ads. *Id.*

Murphy pleaded guilty to ten counts of terroristic threats and one count of conspiracy to commit them, under a "plea agreement" that the trial court approved over the objection of the prosecutor and the victims.[3] He agreed to serve an executed prison sentence of 96 months followed by 450 months of supervised probation. He

---

[3] At the sentencing hearing two months later, Murphy pleaded guilty to 12 other counts of terroristic threats; the sentences for these additional counts were to be served concurrently with the executed sentence under his plea agreement.

agreed to repay $30,000 in restitution and to serve his probation either outside of Minnesota and Wisconsin, or more than 150 miles from the Twin Cities. The probationary period consisted of seven stayed 60-month sentences and one stayed 30-month sentence. At sentencing, the state court explained that his sentence was structured so that any probation violations could lead to an execution of his entire 450-month sentence; Murphy said that he understood. He appealed to the Minnesota Court of Appeals and the Minnesota Supreme Court, which affirmed his sentence on direct appeal. *Id.*

In September 1998, Murphy was released from prison and placed on probation within a certain geographic range, enforced by GPS monitoring. Murphy tampered with his GPS bracelet at least once, and in an unrelated violation, left the boundaries of his 1,000-foot inclusion zone. The state court responded by revoking 24 months of stayed time and ordering him to serve it. The Minnesota Court of Appeals affirmed. *State v. Murphy*, No. C0-99-1453, 2000 WL 272074 (Minn. Ct. App. March 14, 2000) (unpublished), *pet. for rev. denied* (Minn. May 16, 2000).

After being released in 2001, Murphy failed to pay restitution to his victims, left Minnesota without his probation officer's permission, and was arrested in Iowa. The state court revoked 60 months of his probation and executed the sentence. The Minnesota Court of Appeals affirmed. *State v. Murphy*, No. C6-01-2026, 2002 WL 1467447 (Minn. Ct. App. July 09, 2002) (unpublished), *pet. for rev. denied* (Minn. Nov. 19, 2002).

After serving this sentence, Murphy was released on probation, removed to Moorhead, Minnesota, and placed under intensive supervision. Despite being cautioned that any contact with law enforcement must be reported to his probation officer within 24 hours, Murphy nevertheless failed to inform his probation officer of three separate arrests. As a result, he was arrested for violation of his probation

conditions in January 2006. Accidentally released three days later, he returned home for a month before turning himself in after learning of a warrant for his arrest.

In March 2006, the Minnesota state court found that Murphy had willfully violated his plea agreement by failing to maintain contact with his probation officer before and after his inadvertent release, and also for failing to inform any probation officer of: his 2005 arrest and conviction for fleeing a police officer; his 2005 arrest for theft by deception; and his arrest for false information. At sentencing, the court revoked probation on Murphy's remaining sentences and committed him to prison for a total of 330 months (27.5 years).

Murphy appealed the revocation of his probation, challenging the court's authority to impose his full term of potential incarceration for all sentences. The Minnesota Court of Appeals upheld the probation revocation. *State v. Murphy*, No. A06-1471, 2007 WL 4390348 (Minn. Ct. App. Dec. 18, 2007) (unpublished), *pet. for rev. denied* (Minn. Feb. 27, 2008).

In 2009, Murphy sought post-conviction relief, which was denied by the trial court and the Minnesota Court of Appeals. *Murphy v. State*, No. 62-K2-93-1209 (order) (Ramsey Cnty. Dist. Ct. filed Feb. 5, 2009), *aff'd*, No. A09-0383 (Minn. Ct. App. Oct. 8, 2009) (order opinion), *pet. for rev. denied* (Minn. Dec. 15, 2009). He then petitioned for habeas corpus in the District of Minnesota, raising four arguments: (1) the state court lacked jurisdiction to revoke all of his future probation periods and execute his entire sentence; (2) the state court violated due process by failing to notify him that it might revoke all of his probation and execute his sentence; (3) his counsel was ineffective for failing to raise issue (1) on appeal; and (4) the revocation of all of his probation and the execution of all of his stayed sentences was so grossly disproportionate to his conduct as to violate the Eighth Amendment.

The magistrate judge issued a Report and Recommendation finding that Murphy's Eighth Amendment claim was procedurally barred, as he failed to exhaust this issue in the state courts. *See* 28 U.S.C. § 2254(b)(1)(A). The district court agreed and denied the petition for a writ of habeas corpus in all respects, but granted a certificate of appealability on whether Murphy's sentence violates the Eighth Amendment's prohibition of cruel and unusual punishments.

II.

Murphy challenges the district court's denial of habeas relief, arguing the court erred in determining that his Eighth Amendment claim was procedurally defaulted. On appeal from a district court's denial of habeas corpus relief, this court reviews de novo a finding of procedural default. **Kerns v. Ault**, 408 F.3d 447, 449 (8th Cir. 2005). A petitioner in custody by judgment of a state court is entitled to habeas relief only by showing that his detention violates the Constitution, federal law, or treaties of the United States. 28 U.S.C. § 2254(a).

Before seeking federal relief under § 2254, a petitioner ordinarily must "fairly present" the federal claim to the state courts. **Baldwin v. Reese**, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State"). By exhausting all available state court remedies, the prisoner gives a state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." **Duncan v. Henry**, 513 U.S. 364, 365 (1995) (per curiam ), *quoting* **Picard v. Connor**, 404 U.S. 270, 275 (1971). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to 'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts.'" **McCall v. Benson**, 114 F.3d 754, 757 (8th Cir. 1997), *quoting* **Myre v. Iowa**, 53 F.3d 199, 200 (8th Cir. 1995). "If a petitioner has

not presented his habeas corpus claim to the state court, the claim is generally defaulted." ***Barrett v. Acevedo***, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc).

A state prisoner procedurally defaults a claim by violating a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court. ***Coleman v. Thompson***, 501 U.S. 722, 750 (1991). "In all cases in which a state prisoner has defaulted his federal claims in state court . . . federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." ***Id.*** Under Minnesota law, where a defendant took a direct appeal, "all claims raised in the direct appeal as well as 'all claims known but not raised' at the time of the direct appeal are barred from consideration in any subsequent petitions for post-conviction relief." ***Cooper v. State***, 745 N.W.2d 188, 190-91 (Minn. 2008), *quoting* ***State v. Knaffla***, 243 N.W.2d 737, 741 (Minn. 1976). The primary exceptions to the *Knaffla* rule are where a novel legal issue is presented, or the interests of fairness require relief. ***Washington v. State***, 675 N.W.2d 628, 630 (Minn. 2004).

Murphy contends that the revocation of all of his probation for what he deems "technical" probation violations and the execution of a 330-month sentence is cruel and unusual punishment in violation of the Eighth Amendment. *See* ***Ewing v. California***, 538 U.S. 11, 20 (2003) (noting that the Eighth Amendment "contains a narrow proportionality principle that applies to noncapital sentences.") (internal quotation marks and citation omitted); ***United States v. Wiest***, 596 F.3d 906, 911 (8th Cir. 2010) ("It is exceedingly rare for an offense that does not have a capital sentence to violate the Eighth Amendment," which forbids only "extreme sentences" that are "grossly disproportionate to the crime.").

Murphy's claim is procedurally barred. In his direct state appeals and his state collateral attacks on his 2006 sentencing—when the court revoked probation on his remaining sentences and committed him to prison for 330 months—Murphy never raised an Eighth Amendment issue. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State"); *Barrett*, 169 F.3d at 1161 ("If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted."). Murphy failed properly to exhaust the issue of whether the revocation of his probation and execution of his original stayed time was cruel and unusual punishment by fairly presenting it to the Minnesota state courts, so this claim is procedurally defaulted. *Coleman*, 501 U.S. at 750; *Knaffla*, 243 N.W.2d at 741.

Murphy does not show that he could revive the defaulted Eighth Amendment claim in the state courts. *See Washington*, 675 N.W.2d at 630 (noting that the primary exceptions to the *Knaffla* rule are where a novel legal issue is presented, or where the interests of fairness require relief). Murphy's Eighth Amendment claim is not novel, and the interests of justice do not require review. He could have made this argument previously, and does not plausibly explain his failure to do so, aside from conclusory statements that his claim has merit and was asserted without deliberate delay.

Because Murphy's federal claim was defaulted in state court, federal habeas review by this court is barred unless he can show cause for the default and actual prejudice as a result of the alleged Eighth Amendment violation, or demonstrate that failure to consider this claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Here, Murphy has shown neither cause and prejudice for the default, nor that a failure to consider the claim would result in a fundamental miscarriage of justice. The basis for this claim was available to counsel, and "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986); *see also Oglesby v. Bowersox*,

592 F.3d 922, 925 (8th Cir. 2010) (noting that "ineffective assistance of postconviction counsel is not a cause for procedural default"). Because Murphy has not established cause for the default, the question of prejudice need not be reached. *See Oglesby*, 592 F.3d at 926, *citing Oxford v. Delo*, 59 F.3d 741, 748 (8th Cir. 1995).

To fall within the fundamental-miscarriage-of-justice exception, "a habeas petitioner [must] present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006). Murphy makes no claim of actual innocence. Instead, he asserts that it is "unfair" that on the two prior probation revocations, he only had the stayed sentence he was on probation for at the time executed, but most recently—after repeated arrests and other probation violations—he had the entire balance of his stayed sentences executed. However, this was the deal he agreed to. *See State v. Murphy*, No. A06-1471, 2007 WL 4390348, at *3 (Minn. Ct. App. Dec. 18, 2007) (unpublished) (noting that the transcript of Murphy's original sentencing "shows plainly that the parties' and the court's understanding was very clear—each understood that Murphy's entire probationary period was subject to be revoked for any violation of the probationary conditions."). He offers no authority to suggest that escalating punishments for continued probation violations are a miscarriage of justice. The district court did not err in holding that Murphy's Eighth Amendment claim is procedurally defaulted and that he has not demonstrated cause to excuse the default or a miscarriage of justice.[4]

[4] Murphy avoids directly arguing that his original 1994 sentence violates the Eighth Amendment. This argument is foreclosed, because he has already petitioned for and been denied federal habeas relief on the question whether his original 1994 sentence was cruel and unusual punishment—a sentence of 96 months in prison followed by 450 months of probation, which he agreed to serve after the Minnesota state court explained that his sentence was structured so that any future probation violations could lead to imposition of his entire 450-month sentence. *See* 28 U.S.C. § 2244 (b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.").

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____