# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2332

_____

Manuel Enrique Camacho

*Plaintiff - Appellant*

v.

Wendy Kelley, Director, Arkansas Department of Correction

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: March 16, 2018
Filed: April 24, 2018

_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

On the afternoon of May 6, 2006, Daniel Francis was riding home from work in a car driven by his friend, Tracy Stith. Stith was either aggressive or inattentive and drove in a manner that offended another driver, Manuel Enrique Camacho. At some point Camacho handed a .357 handgun to his backseat passenger, Serafin Sandoval-Vega, and directed him to shoot into the car in which Francis was riding. Sandoval-Vega fired three times at the car. One bullet entered the right front

window, fatally striking Francis. Camacho then drove directly to a Wal-Mart in Rogers, Arkansas, where he gave Sandoval-Vega a credit card and instructed him to buy more ammunition. Camacho was eventually charged in Benton County Circuit Court with capital murder as an accomplice. The state pursued the death penalty.

Trial started on July 8, 2011, with sequestered, individual *voir dire*. After three days of jury selection and before a jury was empaneled, Camacho decided to accept a plea proposal that took the death penalty off the table. He pled guilty to the Accomplice to Murder charge and was sentenced to life without the possibility of parole. Camacho exhausted his state remedies and timely filed a petition for habeas corpus relief under 28 U.S.C. § 2254, raising several grounds for relief. The district court[1] denied the petition on all grounds.

Camacho has appealed raising a single issue: were his trial lawyers ineffective when they allowed him to plead guilty without first seeking an evaluation to determine whether he was competent to enter a plea in light of a prior neuropsychiatric report that specifically noted that Camacho suffered from post-traumatic stress disorder with accompanying frontal lobe impairment? We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas, adopting the report and recommendations of the Honorable James R. Marschewski, United States Magistrate Judge for the Western District of Arkansas, now retired.

## I. Background

### A. State Court Proceedings

When Camacho was charged with capital murder, two experienced criminal defense attorneys, Tim Buckley and Kent McLemore, were appointed to defend him. They divided the defense between themselves, with Buckley primarily working on guilt and innocence related issues and McLemore working primarily on penalty phase issues.

During an August 7, 2007, status conference, Benton County Circuit Judge Tom Keith directed *sua sponte* that Camacho undergo a mental health evaluation—as was the court's customary practice. Buckley objected, noting that the associated interview of Camacho would not be privileged and informing the court that he feared that the interview might solicit statements that could be used against Camacho. The state, apparently recognizing that Buckley's concerns were legitimate, suggested that the problem could be avoided if the defense were required to obtain a mental health expert. Judge Keith agreed and directed the defense lawyers "to obtain a mental health expert for mitigation purposes." Over the next several months, Buckley and McLemore identified three mental health experts, Dr. Pablo Stewart, Dr. Martin Faitak, and Dr. Antonio Puente, each of whom performed some testing or evaluation of Camacho.

Shortly before trial, Dr. Stewart produced a neuropsychiatric report for the defense team. In his report, Dr. Stewart opined that Camacho suffered from post-traumatic stress disorder (PTSD) with accompanying frontal lobe deficits, which "contributed to [Camacho] being unable to act 'Knowingly' and 'Purposely' with respect to his conduct at or around the time of his alleged offenses." All parties agree that Dr. Stewart never expressed any opinion that Camacho was not fit to stand trial or to enter a plea.

-3-

On July 11, 2008, the third day of *voir dire*, Camacho accepted a plea offer that allowed him to escape the death penalty. A lengthy plea colloquy ensued during which a weeping Camacho made a statement to the victim's family and his own family. The statement to his family was in Spanish. Judge Keith asked that the statement be restated in English which Camacho did. After hearing from all interested parties, the court sentenced Camacho to a term of life without the possibility of parole.

On October 9, 2008, Camacho filed a *pro se* petition in Benton County Circuit Court raising a number of issues as a basis for post-conviction relief. The petition did not raise the ineffective assistance of counsel claim that is at issue here. The Circuit Court denied the petition, and the Arkansas Supreme Court affirmed.

### B. Federal Court Proceedings

On April 13, 2012, Camacho filed a habeas petition in the United States District Court for the Western District of Arkansas under 28 U.S.C. § 2254, which raised the following claims:

1. His plea was coerced;

2. His trial lawyers failed to provide effective assistance when they:

   A. failed to provide an interpreter during their discussions with him,

   B. failed to insist on a competency evaluation prior to allowing him to plead guilty,

   C. induced him to enter a plea,

   D. failed to conduct an adequate pre-trial investigation, and

-4-

E.    failed to move to dismiss the charges on the ground that he had been deprived of his right to a Speedy Trial under the United States Constitution;

3.    The delay in consular notification constituted a deprivation of the counsel required under the United States Constitution and the protocols established at the Vienna Conference; and

4.    Arkansas engaged in prosecutorial misconduct when it failed to inform the defense of the presence of a gun in the victim's car until the time of jury selection.

A hearing on the habeas corpus petition was held on November 8, 2016, on two issues: (1) did Camacho possess sufficient mental competency "to enter a knowing and voluntary plea;" and (2) did Camacho's lawyers provide ineffective assistance when they failed "to ensure that mental-health evaluations were completed prior to the entry of a guilty plea to determine competency to stand trial"?   Among the witnesses called were Dr. Stewart, Judge Keith, and Camacho's trial lawyers, Buckley and McLemore.

The evidence presented at the hearing established that Dr. Stewart was retained in January 2008 to conduct a mental health evaluation.  He interviewed Camacho in March 2008 after reviewing an exhaustive psychosocial history of Camacho prepared by the defense's mitigation specialist.  After the interview Dr. Stewart successfully urged Camacho's lawyers to have a neuropsychological examination conducted by Dr. Puente in order "to get an objective read on Mr. Camacho's cognitive functioning" and to make sure that something had not been misunderstood in light of native-language related problems or cultural misunderstandings.  Once completed, this information was made available to Dr. Stewart who shortly thereafter submitted his report.

At the time of referral to Dr. Puente, Dr. Stewart believed that Camacho was suffering from PTSD, a likely major depressive disorder, and poly-substance dependence, all of which contributed to a diminished mental capacity and significant cognitive impairment. Dr. Puente's testing confirmed PTSD and found significant frontal lobe impairment. Dr. Puente's testing revealed that Camacho was in the low-average IQ range and that he was in the first percentile for frontal lobe functioning.

Neither Dr. Stewart nor Dr. Puente ever expressed to counsel a concern about Camacho's fitness to stand trial, in spite of Dr. Stewart's experience in the field of neuropsychiatric forensics. When asked about this, Dr. Stewart testified that he had not been asked the question, although he did acknowledge that the examination was for the purpose of mental evaluation. Dr. Stewart also agreed that testing existed to evaluate legal competency and that he had not ordered legal competency testing. Notwithstanding this failure to raise or test for competency, Dr. Stewart had no difficulty at the 2016 habeas corpus hearing opining that Camacho was not competent to enter a plea in July of 2008. Dr. Stewart also expressed the opinion that pre-habeas court records supported this conclusion, noting that the admissions in the change-of-plea colloquy should be discounted because Camacho only gave two-word answers when questioned by Judge Keith.

Judge Keith testified that he raised the issue of a mental health evaluation at the status conference because it was his customary practice in death penalty cases. He recalled that Buckley persuasively argued that a court-ordered evaluation was unnecessary and that the defense would advise the court if a need arose to obtain a court-ordered evaluation. Judge Keith accepted this approach because he was very familiar with Buckley and McLemore and he trusted their professional judgment. Judge Keith observed nothing during the pre-trial or trial proceedings which led him to believe that Camacho had competence issues, and, if he had seen anything, he would have immediately ordered an evaluation.

Judge Keith acknowledged that if he had seen Dr. Stewart's statement that Camacho was not able to act knowingly or purposely, it would have raised concerns. He testified that, if Camacho's lawyers had raised the issue, under Arkansas law he would have suspended trial proceedings and ordered Camacho evaluated independently. Judge Keith testified, "I can't say for sure that it would have affected my decision on whether to accept his plea of guilty, because I had the opportunity to observe him during that process, but if there was an issue, if the death penalty had still been on the table, I would very definitely have ordered him evaluated."

Camacho's trial lawyers were of the opinion that Dr. Stewart's report did not raise a psychiatric defense; rather, they felt that at most the report provided strong evidence for mitigation and a diminished capacity defense. Neither of his lawyers expressed any concerns about their ability to communicate with Camacho. They had met with him on numerous occasions to discuss discovery and strategy[2] and never noted any communication difficulties. They testified that Camacho was appropriately interested in his defense, actively engaged in the discussions, expressed and appeared to possess a solid understanding of the issues and the defense, and was especially interested in a plea agreement that would take the death penalty off of the table. Buckley testified that at the time of the appointment he was concerned about language barriers but was relieved when he observed that Camacho spoke English so well. Neither lawyer had any doubt about Camacho's competence. McLemore noted that the areas of concern regarding fitness to enter a plea —understanding the charge and penalties; understanding the role of the judge, prosecutor, and defense lawyers; understanding the evidence and elements of the offense; understanding the defenses; and being able to assist in his own defense—were not issues with Camacho. Both

_____

[2]Buckley testified he had met with Camacho on twenty-five or twenty-six occasions to discuss the case while McLemore said he met with Camacho eighteen or nineteen times.

lawyers testified that it was plain that Camacho understood the proceedings and was actively involved in his defense.

When asked about the circumstances surrounding the change of plea decision, McLemore testified that Camacho knew that he was pleading guilty to avoid trial and the risk of a death sentence. The lawyers did not consult with Dr. Stewart about Camacho's competency to enter a plea because nothing in his report or their conversations led them to believe that competency was an issue. McLemore noted that, given his own observations of Camacho and the lack of any concern about competency expressed by any of the three experts, there was no need for further evaluation.

## II.    Discussion

On appeal from a denial of a habeas petition, "[w]e review the district court's findings of fact for clear error and its conclusions of law *de novo*." Randolph v. Kemna, 276 F.3d 401, 403 (8th Cir. 2002) (quoting Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000)). We review a finding of procedural default de novo.[3] Arnold v. Dormire, 675 F.3d 1082, 1086 (8th Cir. 2012) (citing Murphy v. King, 652 F.3d 845, 849 (8th Cir. 2011)).

---

[3]It is unclear from the record whether the district court denied Camacho relief because his claim was procedurally defaulted or because the claim failed on the merits. Under Martinez v. Ryan, 566 U.S. 1, 17 (2012), a procedural default does not bar a court from hearing a substantial claim of ineffective assistance from trial counsel where the petitioner did not have counsel in the state collateral proceeding. A substantial claim is one that has "some merit." Id. at 14 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Because a procedural default analysis and a merits analysis each require application of the Strickland ineffective assistance standard, our conclusion here would be the same under either analysis.

We apply the familiar two-prong Strickland test to claims of ineffective assistance of counsel: (1) whether the defendant's counsel was deficient in his performance; and (2) whether that performance prejudiced the defense such that it "deprive[d] the defendant of a fair trial." Booth v. Kelley, 882 F.3d 759, 762 (8th Cir. 2018) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). Our review on the first prong is highly deferential, and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. Prejudice will be found if Camacho is able to establish that there is a reasonable probability that if his counsel had raised the issue of competence to stand trial or enter a plea, he would have been found incompetent to proceed. Paul v. United States, 534 F.3d 832, 845 (8th Cir. 2008).

Camacho has not shown that his counsel's initial performance was deficient. His lawyers opposed a state hospital evaluation because of the potential that Camacho's statements during the evaluation would be used against him by the prosecution. This was an acceptable strategic decision by counsel. See United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 690) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

Likewise, Camacho has failed to prove that his lawyers were deficient in failing to have a competency evaluation performed prior to the entry of the plea. Nothing in any of the three reports that the lawyers received and reviewed would have caused a reasonably professional counsel to conclude that Camacho was incompetent to stand trial or enter a plea. More importantly, the lawyers' numerous contacts with Camacho demonstrated that he was competent. Camacho actively participated in his defense, asked appropriate questions, understood the nature of the proceedings, understood the roles of each of the participants, and appropriately sought to achieve a result that avoided the death penalty. Counsel expressly and appropriately understood that Dr. Stewart's report would support a diminished capacity

-9-

defense—especially with regard to the findings of severe frontal lobe impairment. The lawyers, however, were also correct in their assessment that frontal lobe impairment, no matter how severe, was insufficient, standing alone, to establish a lack of fitness to proceed to trial or enter a plea.

Camacho's lawyers and the judge agreed that based on their independent observations of Camacho over the course of the case, including the change of plea hearing, Camacho was plainly competent to proceed. These assessments are overwhelmingly supported in the record. On this record Camacho has failed to establish that Buckley and McLemore were deficient in failing to pursue a competence evaluation prior to the change of plea. See Paul, 534 F.3d at 845 (concluding counsel was not ineffective by failing to assert defendant's incompetence to stand trial where one psychiatrist opined he may be incompetent but two others disagreed); Forsyth v. Ault, 537 F.3d 887, 892 (8th Cir. 2008) (concluding counsel was not ineffective by failing to argue that defendant was incompetent to proceed where four mental health professionals did not express any concerns about competency before trial but seven years later a different psychiatrist was willing to testify that defendant had been incompetent); Vogt v. United States, 88 F.3d 587, 592 (8th Cir. 1996) (concluding counsel acted reasonably by not requesting a competency hearing where nothing they observed in working with defendant made them question his competency and their observations were corroborated by the trial judge, prosecutor, case agent, and co-defendants's attorneys).

The prejudice prong is equally problematic for Camacho. While a few isolated facts are favorable to him, taken as a whole the evidence is insufficient to establish a reasonable probability that he would have been found incompetent to proceed. Dr. Stewart's opinion is eight years removed from his original report and is admittedly based on a view that could have been confirmed by testing that was never performed and that was never brought to counsel's attention.

-10-

While Judge Keith testified that if he had read Dr. Stewart's report it would have raised some concerns, at the habeas hearing he persisted in the view that his personal observations would not have supported a finding of incompetence. Judge Keith acknowledged that he would have been more concerned if the death penalty had not been avoided by the change of plea—which is entirely plausible, as a rational person might well plead guilty to potentially save his life but not do so if his life were still in jeopardy. Judge Keith's potential concerns in context and in light of all the evidence are insufficient to establish a reasonable probability of a finding of incompetence to enter a plea. Camacho has failed to meet his burden on each of the prongs of Strickland.

## III.    Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____