# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2988

_____

United States of America,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　　*
　　　　　　　　　　　　　　　　　　*　　Appeal from the United States
　　　v.　　　　　　　　　　　　　　*　　District Court for the
　　　　　　　　　　　　　　　　　　*　　District of Minnesota.
Henry Fred Camacho, Jr.,　　　　　　*
　　　　　　　　　　　　　　　　　　*　　　　[PUBLISHED]
　　　　　　　Appellant.　　　　　　　*

_____

Submitted: May 14, 2003
Filed: November 3, 2003

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

Henry Fred Camacho, Jr. pleaded guilty to committing mail fraud in violation of 18 U.S.C. § 1341 (1994). He appeals the district court's eighteen-month prison sentence and $585,559.25 restitution order, arguing that (1) the district court erroneously determined the loss amount, and (2) he was entitled to a minor-role reduction. We affirm the district court's refusal to grant a minor-role reduction but reverse and remand with respect to the amount of the loss.

I.

Camacho owned a computer software consulting firm, Innovative Software Designs (ISD), that he merged with a company owned by his longtime friend and business associate, Keith Kimmons, in 1994. Kimmons was an independent contractor for Blue Cross Blue Shield of Minnesota (Blue Cross), and in March 1995, Blue Cross made Kimmons its Director of Enterprise Computing. In that capacity, Kimmons was in charge of hiring outside consultants and approving consulting invoices for payment. Without notifying Blue Cross of his relationship with ISD, Kimmons hired ISD to perform consulting services for Blue Cross.

Kimmons also owned Investment Technology Group (ITG), another computer consulting business, with his son, Nathan Kimmons. Kimmons created invoices on behalf of both ISD and ITG and submitted them to Blue Cross for services that were not performed. As Director of Enterprise Computing, Kimmons approved the fraudulent invoices for payment by Blue Cross. Camacho claims that he did not personally submit any fraudulent invoices but admits to knowing of the scheme and not doing anything to stop it. Camacho and Kimmons were charged in a thirty-two-count indictment for committing mail fraud based on payments made by Blue Cross to ISD between August 1996 and June 1997. Camacho pleaded guilty to the first count of mail fraud and the remaining counts were dismissed. Keith and Nathan Kimmons were charged in a separate indictment based on payments fraudulently made to ITG, and both pleaded guilty.

In Camacho's plea agreement, the government agreed that Camacho was responsible for between $200,000 and $350,000 of fraudulent payments from Blue Cross to ISD. It also agreed that Camacho should receive a reduction for his minor participation in the offense. In preparing the presentence report (PSR), the probation officer determined that Camacho was responsible for $585,559.25 of loss to Blue Cross based on the amount of payments made by Blue Cross to ISD during the ten-

2

month period covered by the indictment. (PSR ¶ 10.) The probation officer also noted that "[a]lthough $585,559.25 was deemed fraudulent, according to [the Blue Cross representative's statement], Blue Cross paid Innovative Software Designs $1,327,041.95 over a twenty-eight month period." (PSR ¶ 20.) The probation officer recommended that Camacho be viewed as an average, as opposed to a minor, participant based on the fact that he prepared and submitted fraudulent invoices and that he had full knowledge of the scheme. (PSR ¶ 34.)

In the face of Camacho's objection to the loss calculation, and without taking any evidence as to how the probation officer had arrived at the $585,559.25 figure deemed as "fraudulent," the court adopted the loss amount contained in the PSR, which resulted in a ten-level rather than an eight-level increase to Camacho's base offense level of six under the Sentencing Guidelines. United States Sentencing Guidelines (USSG) Manual § 2F1.1 (1995). The district court also declined to give Camacho a two-level reduction for minor participation in the offense. See USSG § 3B1.2(b). The district court sentenced Camacho to eighteen months imprisonment, the low end of his sentencing range, and ordered that he pay restitution of $585,559.25. Camacho appeals his sentence.

## II.

Camacho appeals the district court's findings regarding the loss amount and his level of participation in the offense. "We review a district court's factual findings for clear error, and we accord due deference to a district court's application of the Sentencing Guidelines to the facts." United States v. Hernandez, 187 F.3d 806, 808 (8th Cir. 1999). Even though we accord statutory "due deference" to the district court's application decision, 18 U.S.C. § 3742(e), guidelines application is essentially a question of applying law to the facts, an exercise we independently review. See United States v. Johnson, 326 F.3d 934, 936 (8th Cir. 2003) (applying de novo review to district court's application of guidelines to the facts).

3

A.    Loss Amount

Camacho disagrees with the district court's finding that $585,559.25 of loss should be attributed to him.  Camacho argues that $585,559.25 represents the total amount that ISD billed Blue Cross during the ten-month period covered by the indictment and includes invoices for legitimate work which ISD performed during that time period.  The government argues that Camacho waived the argument by not objecting on this basis before the district court.  The government suggests that Camacho raised only a foreseeability issue below, not the issue of whether the $585,559.25 included work actually performed.

Camacho did not file written objections to the PSR, but he did file a position statement prior to sentencing, in which he noted unresolved issues with the PSR. Camacho "object[ed]" to paragraph 10 of the PSR, arguing that the $585,559.25 loss amount was "believed to encompass the total sum invoiced" by ISD to Blue Cross and that it did "not account for the fact that ISD actually provided services to [Blue Cross.]" (D. Ct. Docket Entry # 50, Defense Position Re: Sentencing Factors at 2.) During the sentencing hearing, the government stated that it agreed with Camacho that he should be liable for a loss between $200,000 and $350,000.  (Sent. Tr. at 3.) The district court rejected the amount contemplated in the plea agreement and adopted the loss amount contained in the PSR.  (Id. at 4-5.)

After the court had determined the applicable sentencing level and had given Camacho an opportunity to address the court, Camacho's attorney again raised the issue of the loss amount.  He noted that in preparing the PSR the probation officer apparently took the sum of all invoices listed in the indictment as the loss amount, and he argued that that amount erroneously included payment for services that had legitimately been performed during that time frame. (Id. at 24.) The court responded that the probation officer had accounted for that issue and that the loss "ha[d] been

4

adjusted appropriately," to which Camacho's attorney responded, "I just wanted to make sure." (Id.)

The government argues that Camacho failed to preserve the specific issue of whether the $585,559.25 loss amount included legitimately billed work because Camacho merely stated in his position paper that he "believed" it did, and when discussing it with the court, his attorney conceded the point with his response that he "just wanted to make sure." When the court responded to Camacho's objections the second time, it stated that the probation officer had taken legitimate work into account in formulating the loss amount. The only thing in the PSR to support the court's statement is the recitation that Blue Cross had paid ISD $1,327,042.95 over a twenty-eight-month period, and a statement in the Addendum that $585,559.25 was the total of the fraudulent billings. (PSR ¶ 20; PSR Add. at 1.) However, those facts do not speak to whether the $585,559.25 amount, which was limited to the ten-month period covered by the indictment, was the total amount billed for the period covered by the indictment or whether it was adjusted for legitimate payments. From the limited record, it seems to us that the court was mistaken, or more accurately, not corrected, in believing that the two numbers covered the same time frame, and that the $585,559.25 was an adjusted figure representing only the fraudulent billings.

Although Camacho could have better explained the apparent timing discrepancy, we believe that he adequately raised the specific loss issue by asserting during the sentencing hearing that the loss amount included legitimate payments. He had filed his position paper before sentencing including his objection to the amount of the loss. At that point, the court had an obligation to make a factual finding on the disputed issue. "In making its finding, the district court is bound to do so on the basis of the evidence and not the presentence report because the presentence report is not evidence and not a legally sufficient basis for making findings on contested issues of fact." United States v. Stapleton, 268 F.3d 597, 598 (8th Cir. 2001) (citation and internal marks omitted). Rather than make a finding based on evidence, the court

5

merely informed Camacho that the probation officer had taken his concerns into consideration. That belief was apparently based on the amended addendum to the PSR where the probation officer discussed Camacho's loss contention and advised the court that the $585,559.25 was "the total amount of the fraudulent invoices." (PSR Add. at 1.) In the face of the objection, however, the statements in the PSR and its Addendum were no longer sufficient, and the district court erred in basing its finding of the loss amount solely on the assertions of fact contained in the PSR without taking additional evidence. See United States v. Arrington, 215 F.3d 855, 857 (8th Cir. 2000) (vacating sentence and remanding for factual determination where it was unclear that district court considered any evidence other than bald assertion in PSR). It may be that the $585,559.25 amount accounts for legitimate payments. But that determination must come from the evidence, not from the conclusions of the probation officer as contained in the PSR and its Addendum.

B.     Minor Role

Camacho and the government objected to the PSR's recommendation that Camacho not receive a two-level reduction to his base offense level for his minor role in the offense. Camacho carried the burden of establishing his entitlement to the minor-role reduction, and we review the district court's determination that he did not play a minor role for clear error. See United States v. O'Dell, 204 F.3d 829, 837 (8th Cir. 2000).

The district court is allowed to reduce a defendant's offense level by two levels if the defendant was a minor participant. USSG § 3B1.2(b). The adjustment is intended "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant," USSG § 3B1.2, comment. (backg'd.), "but whose role could not be described as minimal," id., comment. (n.3). In declining to grant Camacho the two-level reduction, the court noted that the scheme would not have worked without Camacho's computer consulting business,

6

into which Blue Cross's funds were diverted. It also noted that Camacho's description of his relationship with Kimmons in the past as "forming a team and working in tandem" spoke "volumes . . . about how this all got going and got started, and clearly it took two people in the situations that you were to have this scheme become effective." (Sent. Tr. at 24.)

Camacho does not take issue with the facts supporting the court's reasoning, but argues that he is less culpable than Kimmons, who contrived and orchestrated the scheme, and that at most, he is guilty of willful blindness in not stopping the scheme. We have repeatedly stated in applying this guideline that "[t]he mere fact that a defendant is less culpable than his co-defendants does not entitle defendant to 'minor participant' status." Ponce v. United States, 311 F.3d 911, 913 (8th Cir. 2002) (citation and internal marks omitted). It is clear from the district court's statements that it did not fully believe Camacho's claims of innocence, particularly given his past history with Kimmons. Camacho asked Kimmons to take care of the invoicing for ISD, knowing that Kimmons was responsible for approving invoices on behalf of Blue Cross. Without Camacho's business, the fraudulent scheme could not have happened. Further, the funds were diverted directly into Camacho's business. We cannot say that the district court clearly erred in denying the two-level reduction. See United States v. McGrady, 97 F.3d 1042, 1043 (8th Cir. 1996) (holding drug courier was not entitled to minor-role reduction because drug sale would not have occurred but for his participation).

### III.

We affirm the district court's refusal to grant a two-level minor-role reduction, but we reverse the district court's finding that Camacho was responsible for a loss of

7

$585,559.25. Camacho's sentence is vacated, and the case is remanded for resentencing based on a redetermination of the amount of loss attributable to Camacho.

_____