# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1605

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Buffy Bush, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  October 21, 2003

Filed:  December 22, 2003

_____

Before BYE, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Buffy Bush appeals from the sentence of 188 months' imprisonment the district court imposed after Bush pleaded guilty to conspiracy to possess cocaine base with intent to distribute it.  The district court declined to adjust Bush's offense level downward to account for a mitigating role under U.S.S.G. § 3B1.2(b) (Nov. 2002). Bush contends that it was clear error for the district court not to find that she played a minor role in the offense and that the district court erroneously based its decision not to give the adjustment on its view that the adjustment would result in too lenient a sentence.  We remand for resentencing.

Bush was indicted for conspiracy to distribute and possess with intent to distribute 50 grams or more of a substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1) (2000). She entered a plea agreement that stated: "The parties hereby agree that you should be held responsible beyond a reasonable doubt for more than 1.5 kilograms of a mixture or substance containing . . . cocaine base and, therefore, pursuant to U.S.S.G. § 2D1.1, the defendant's base offense level is 38." She also agreed that the presentence investigation report prepared by the probation office could be used by the court in sentencing.

The presentence report stated that Bush was responsible for 66 kilograms of cocaine base, which resulted in a base offense level of 38. Based on a proffer by Sherease Latin, the presentence report stated that Bush had

> actively assisted Will Curtis in his crack operation by either purchasing baking soda for him, allowing him the use of her home to cook crack, or both. Curtis paid her either with cash or crack each time. Sherease's testimony would show that Buffy is responsible for approximately 66 kilos of crack cocaine (2 kilos per encounter, 2 encounters per month, for 29 months, plus 8 kilos).

The presentence report recommended that Bush receive no downward adjustment for mitigating role:

> She was described by the ATF agent as being a mid-level participant. According to ATF Agent Slosson, "She was right in the middle of it all and knew what was going on." Agent Slosson states the defendant made several smaller sales of crack cocaine, usually in ounces, and/or at times gave crack cocaine to relatives who did favors for her. According to the proffer statement of a confidential informant, the related case defendants were allowed into the defendant's home at least two times per month to cook crack cocaine. . . . She also purchased baking soda for them, an ingredient used in the cooking of crack cocaine.

Accordingly, the presentence report recommended that Bush receive no adjustment for mitigating role in the offense under U.S.S.G. § 3B1.2. The presentence report did recommend that Bush receive a three-level downward adjustment for acceptance of responsibility.

At the sentencing hearing, Bush objected to the presentence report's recommendation that she receive no mitigating role adjustment. She also asked the court to depart downward from her criminal history category of III. Bush did not present any evidence on the mitigating role objection, but relied on argument of counsel. Counsel argued that three other people, Elijah Harris, William Curtis, and Howard Marion, who were involved in the conspiracy and prosecuted in separate proceedings, were more culpable than Bush. Counsel argued that Curtis was the leader and that Marion and Harris were "close to equal partners with Mr. Curtis," but that Bush only aided the conspiracy by letting the others use her home to cook the crack and by purchasing baking soda for them.

The district court granted the downward departure on criminal history, ruling that Bush would be sentenced on the basis of criminal history category II. The court stated that the role in the offense adjustment was a very close question.

> I've struggled a lot with your other objection on her role in this offense. That's borderline, I think, at best.
> In any conspiracy, everybody's role in the offense differs.
> Some are more involved than others and that doesn't necessarily mean every time that a person is entitled to a downward adjustment simply because their role may not be as great as others and drawing these comparisons gets to be difficult ultimately.
> I think that her role in this offense certainly is far more than minimal.
> She certainly has been involved more in this offense than you would consider a person who has a minimal role.

Is her role minor as with respect to the others? Well, she's really facing a very substantial sentence.

We start out with the basic guidelines, she's facing a sentence of 210 to 262 months, which is roughly very close to saying she's facing a sentence of twenty years.

And I look at the sentence that must be imposed considering her offense conduct in the matter, and what has driven it, of course, as much as anything, is the substantial amount of crack cocaine that is involved.

And crack cocaine is a real scourge in our society today, but because the sentence is substantial I'm going to grant the defendant's objection to failure to give her a minor role adjustment....

I think that as I look at this offense, and as I look at the people that are involved in it, I see her role as first having the house and furnishing it, and doing some of the grocery shopping.

Yes, she did some sales, and we have reference in the presentence investigation report about the sales she made.

And we have the information in there that in exchange for her participation she received crack cocaine.

(Emphasis added). The court stated that it would sentence on the basis of criminal history II and a base offense level of 38. With downward adjustments of three points for acceptance of responsibility and two points for minor role, the court arrived at a total offense level of 33, which converted to a sentencing range of 151 to 188 months. At this point, defense counsel spoke up and informed the court that under the new guidelines effective November 1, 2002 (three months before the hearing), for anyone found to have a minor role in the offense, the base offense level was capped at 30. See U.S.S.G. § 2D1.1(a)(3) (Nov. 2002).

The court was evidently taken aback by the new information:

It creates a dilemma for me, Ms. Shanahan, because one of the reasons frankly why I was considering your objection to her role in the offense was that the sentences were already so substantial without

-4-

having that in mind, and I was trying to, under those guidelines, bring that sentence down to what I thought was a more appropriate sentence.

I just am not comfortable sentencing her on the basis starting with a base offense level 30 when I look at what her involvement in this crime is.

I mean, I think I then end up with a sentence which I don't think is appropriate under the guidelines.

And so you see I'm sort of caught on the horns of a dilemma.

If I grant your objection I'm reducing her sentence to a sentence which I believe is below the sentence which is appropriate for her involvement.

If I don't grant it, I'm going to be sentencing her in a range which I feel is too high for her involvement in it.

Bush's counsel argued that the mandatory minimum of ten years was "certainly more than, I guess more than a punitive sentence when you again compare it with the other individuals involved in this case." The court took issue with that argument, stating:

See, that's the difficulty, Ms. Shanahan. She was really part and parcel of this conspiracy.

She is just not just sitting on the sidelines at all. She was really involved.

She was involved in seeing that it was cooked, the powder was cooked up into crack cocaine.

She may not have been a major role player in the distribution chain, if you will, but she certainly was more than, maybe even more, she was certainly more than a minimal player in any event, maybe even more than a minor player when it comes to the conversion of the powder cocaine to crack cocaine.

The court denied the minor role adjustment, which left Bush with a total offense level of 35 (after the acceptance of responsibility adjustment) and a sentencing range of 188-235 months. The court imposed a sentence of 188 months.

The determination of whether the defendant played a minor role in the offense is a question of fact, which we review for clear error. United States v. Camacho, 348 F.3d 696, 700 (8th Cir. 2003). The defendant carries the burden of proving he or she is entitled to the adjustment. Id.

Although Bush only raises one point on appeal, she actually makes two arguments. First, she contends that the district court's finding that she did not play a minor role is clearly erroneous. Second, she contends that the district court erred by basing the denial of the adjustment, in part, on its assessment that the sentence resulting from the adjustment would be too lenient.

We must reject Bush's first argument. She contends that she was less culpable than William Curtis, Elijah Harris, and Howard Marion, and the government concedes as much. Relative culpability of the various conspirators is indubitably relevant. U.S.S.G. § 3B1.2 Application Note 3(A) states: "This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." However, our cases make it clear that merely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was "deeply involved" in the offense. See United States v. West, 942 F.2d 528, 531 (8th Cir. 1991); United States v. Thompson, 60 F.3d 514, 517 (8th Cir. 1995) ("Taken to its logical conclusion, Thompson's position would mean that every participant in every drug distribution scheme would be presumably entitled to a minor participant reduction so long as he or she were able to prove the existence of an upstream drug supplier. We reject this logic . . . ."). To prove entitlement to the adjustment, the defendant must prove he or she is minor participant by comparison with other participants and by comparison with the offense for which he or she was held accountable. Ponce v. United States, 311 F.3d 911, 913 (8th Cir. 2002); United States v. McCarthy, 97 F.3d 1562, 1574 (8th Cir. 1996) (issue is whether defendant had

minor role in relevant conduct for which defendant was held accountable at sentencing).

It was not clear error for the district court to find that Bush did not play a minor role. The court found she was "really involved," based on subsidiary findings that she allowed her house to be used for the cooking, she bought baking soda to be used in the cooking process, she sold small amounts of crack, and she was paid in crack for her assistance. The presentence report also stated that Bush used crack to pay relatives for services. Further, as Bush concedes in her brief, "It is true, as the PSR notes, that Ms. Bush was aware of what was going on with Curtis and his associates." These facts are sufficient to show that the district court's finding of no minor role was not clear error. See United States v. McGrady, 97 F.3d 1042, 1043 (8th Cir. 1996) (not clear error to find that drug courier was not entitled to adjustment); United States v. Carrazco, 91 F.3d 65, 67 (8th Cir. 1996) (same); United States v. Wilson, 102 F.3d 968, 973 (8th Cir. 1996) (bodyguard and driver). The district court arguably undermined its findings somewhat when it stated that Bush was "maybe even more than a minor player," but this ambiguous statement is not enough to undo the effect of other findings sufficient to support the denial of the adjustment.

The more substantial question is whether the court erred in basing its decision about the adjustment in part on the length of sentence the adjustment would compel. The district court candidly acknowledged, both in its initial decision to grant the adjustment[1] and in its later, final decision to deny it,[2] that a factor in the decision was

---

[1]The court asked itself:

Is her role minor as with respect to the others? Well, she's really facing a very substantial sentence.
    We start out with the basic guidelines, she's facing a sentence of 210 to 262 months, which is roughly very close to saying she's facing a sentence of twenty years.

the court's assessment of whether the sentence that would result was too long or too short to fit Bush's crime.   We hasten to observe that, although Bush now objects to the court taking the length of sentence into account, Bush's counsel herself made the same kind of argument to the court, saying, for instance, "I don't understand how the government cannot think that ten years is enough time for someone that had her involvement in this case and that's what I ask the court to consider as well."

The question of what factors the court can take into account in deciding whether to grant an adjustment requires an understanding of the role adjustments play in the overall guidelines scheme.  The guidelines contemplate that the district judge will, at certain junctures in the sentencing process, assess the defendant and the crime before him and determine what length of sentence is appropriate.  Specifically, the guidelines calculation renders a sentencing range, not a sentence certain, and the district court is allowed to select the appropriate sentence within the range.   See U.S.S.G. § 5G1.1(c).

On the other hand, much of the rest of the guidelines sentencing process requires the court to find facts for which the guidelines themselves determine the proper consequences:

<hr>

. . . . And crack cocaine is a real scourge in our society today, but because the sentence is substantial I'm going to grant the defendant's objection to failure to give her a minor role adjustment.

[2]The court said:

If I grant your objection I'm reducing her sentence to a sentence which I believe is below the sentence which is appropriate for her involvement.
      If I don't grant it, I'm going to be sentencing her in a range which I feel is too high for her involvement in it.
      So, the only compromise I can offer is to sentence her on the basis of an offense level of 33 and a criminal history category two.

[T]he federal trial judge in today's sentencing ritual has little or no opportunity to consider the overall culpability of the defendant before him. The Guidelines themselves determine not only which factors are relevant (and irrelevant) to criminal punishment, but also, in most circumstances, the precise quantitative relevance of each factor. . . . Each step of a sentence calculation under the Guidelines represents what mathematicians call a "minimal pair": The judge must decide whether a given factor deemed relevant by the Sentencing Commission is present or absent in the case at hand. Each decision step requires the judge to add or subtract points or "levels"–generally no more than two at a time– that will ultimately determine the sentence of the defendant.

Kate Stith & Jose A. Cabranes, Judging Under the Federal Sentencing Guidelines, 91 Nw. U. L. Rev. 1247, 1254-55 (1997).

At the time of sentencing in this case, the guidelines commentary expressly prohibited a court from departing on the ground of dissatisfaction with the guidelines range. U.S.S.G. § 5K2.0, comment. (Nov. 2002) (superseded by Amendment of October 27, 2003); United States v. Wong, 127 F.3d 725, 727 (8th Cir. 1997); United States v. Cox, 921 F.2d 772, 774 (8th Cir. 1990). Bush contends that this rule also governs adjustments. But adjustments and departures are "distinctly different concepts under the Guidelines. Adjustments are changes to an offense level within the Guidelines. Departures, on the other hand, are sentences imposed outside the Guidelines." United States v. Joetzki, 952 F.2d 1090, 1097 (9th Cir. 1991) (citation omitted). The rule against basing departures on dissatisfaction with the sentencing range therefore does not address the adjustment decision.

For guidance on how to apply adjustments, we look first to the adjustment guidelines themselves. The language of U.S.S.G. § 3B1.2, which governs the adjustment in this case, is imperative: "Based on the defendant's role in the offense, decrease the offense level as follows. . . ." This language does not suggest that a

court can consider any factors other than the defendant's role in the offense in deciding whether or not to give the adjustment.

U.S.S.G. § 1B1.3 (a) provides that adjustments shall be determined on the basis of the following:

(1)

    (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

    (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

Conspicuously absent from what appears to be an exhaustive list is any permission to consider the length of sentence in deciding whether to make an adjustment.

Under 18 U.S.C. § 3742(e) (as amended 2003), with exceptions not applicable here, a reviewing court "shall give due deference to the district court's application of the guidelines to the facts." Therefore, the assessment of whether given facts should result in an adjustment is entrusted to the district court's discretion and should be given deference. See United States v. Rodriguez, 342 F.3d 296, 297 (3d Cir. 2003) ("We acknowledge the considerable discretion afforded the District Court in making the minor role determination, a decision to which we give deference."); United States v. Boyd, 291 F.3d 1274, 1277-78 (11th Cir. 2002) ("[T]he district court has considerable discretion in making this fact-intensive determination . . . ."); United States v. Salameh, 261 F.3d 271, 280 (2d Cir. 2001) ("With regard to the fact-sensitive question of whether a defendant merits a mitigating role reduction, we review for abuse of discretion the district court's application of the Guidelines to the circumstances of the particular case before it."), cert. denied, 536 U.S. 967 and 537 U.S. 847 (2002); United States v. Antonakeas, 255 F.3d 714, 727 (9th Cir. 2001) (reviewing § 3B1.2 determination for abuse of discretion); United States v. Caballero, 936 F.2d 1292, 1299 (D. C. Cir. 1991) ("The application of section 3B1.2 is inherently fact-bound and largely committed to the discretion of the trial judge."). In United States v. McCarthy, 97 F.3d 1562, 1579 (8th Cir. 1996), we held that the decision whether to give a two or four level decrease for mitigating role was reviewed for abuse of discretion. We relied on Koon v. United States, 518 U.S. 81, 97 (1996), which emphasized the district court's retention of discretion in sentencing: "The development of the guideline sentencing regime has not changed our view that, except to the extent specifically directed by statute, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." (internal quotation marks omitted).

Discretion, however, does not include authority to consider and give weight to factors that are not legally relevant to the decision at hand. United States v. McNeil, 90 F.3d 298, 300 (8th Cir. 1996). Thus, in the context of applying the adjustments for acceptance of responsibility, U.S.S.G. § 3E1.1, and obstruction of justice, U.S.S.G. § 3C1.1, we have held that once the district court has found the facts that trigger application of the adjustment, the court must apply the adjustment. In Hall v. United States, 46 F.3d 855 (8th Cir. 1995), the district court announced that it would not apply the obstruction enhancement for threatening a witness because the court recognized the threat was not unusual in the social context of reservation life. We remanded, saying:

> Section 3C1.1 . . . neither limits the offense of obstruction of justice to any particular factual context, such as cases concerning organized crime, nor makes exceptions for social circumstances, such as the realities of reservation life.
> If Hall in fact threatened the witness, the Guidelines did not give the district court discretion to refuse to take the threat into account in sentencing. . . . If Hall threatened the witness, the district court had no choice but to impose the sentence enhancement that the Guidelines mandate.

Id. at 859. Similarly, in United States v. Rice, 184 F.3d 740, 742 (8th Cir. 1999), we held:

> If the sentencing court finds that the defendant accepted responsibility for his or her offense and entered a timely guilty plea, then the defendant is automatically entitled to the full three-level reduction available under § 3E1.1. The language of § 3E1.1(b)(2) is mandatory; when all of its conditions are met, the court has no discretion to deny the extra one-level reduction.

-12-

As the Second Circuit recently remarked, when a district court is considering an adjustment, "General equitable principles do not apply." United States v. Savin, 349 F.3d 27, 37 n.9 (2d Cir. 2003).

In United States v. Zaragoza, 123 F.3d 472 (7th Cir. 1997), the Seventh Circuit held that it was error to fail to assess an enhancement where the government proved obstruction of justice. The district court found the government had proved the facts amounting to obstruction, but that the issue was close: "Do you want me to be honest with you and tell you did the government make a case on obstruction? I think so. Not significantly. 51/49? Maybe." Id. at 486. However, the district court declined to impose the obstruction of justice enhancement because the court believed the enhancement would result in an excessive sentence. The Seventh Circuit held, "The clear mandate of the Guidelines precludes such an exercise of discretion," and remanded for resentencing. Id. at 486-87.

Zaragoza dealt with an issue nearly identical to the one raised in this case, and its reasoning is consistent with our understanding of what the district court is supposed to be doing when it considers adjustments. Although the conscientious and able district judge in this case sought only to achieve justice, the guidelines require that, in considering enhancements, the district court may exercise its discretion only in finding whether the facts that trigger the enhancement exist and not in deciding whether application of the enhancement will have a desirable effect on the defendant's punishment. Because both the district court's initial decision to grant the adjustment and its later decision to deny it were based in part on the effect of the adjustment on the length of sentence, we must remand for resentencing.

_____