# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3769

_____

United States of America,          *
                                   *
                Appellee,          *
                                   *   Appeal from the United States
        v.                         *   District Court for the
                                   *   Northern District of Iowa.
Jose Luis Rodriguez-Ramos,         *
                                   *
                Appellant.         *

_____

No. 11-1019

_____

United States of America,          *
                                   *
                Appellee,          *
                                   *   Appeal from the United States
        v.                         *   District Court for the
                                   *   Northern District of Iowa.
German Robles-Garcia,              *
                                   *
                Appellant.         *

_____

Submitted: September 20, 2011
Filed: December 9, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Appellants German Robles-Garcia and Jose Luis Rodriguez-Ramos were tried jointly by jury. Robles was convicted of conspiracy to distribute less than 50 grams of methamphetamine mixture, 50 grams or more of methamphetamine actual, and 5 kilograms or more of cocaine under 21 U.S.C. § § 841(a)(1) and 841(b)(1)(A). He was also convicted of kidnapping in violation of 18 U.S.C. § 1201. Rodriguez was convicted of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846. The district court[1] sentenced Robles to two concurrent terms of 600 months imprisonment with five years of supervised release and sentenced Rodriguez to 260 months of imprisonment with five years of supervised release. Both now appeal. We affirm.

## I. Factual Background

### *A. Robles*

Appellant Robles and Martin Garcia-Huerta, who was a cooperating witness at trial, had an agreement whereby Robles, who lived in California, would supply cocaine to Garcia for distribution in Omaha, Nebraska, and the two would split profits.[2] In the fall of 2009, the relationship between Garcia and Robles began to unravel, largely because Garcia owed Robles $100,000 for cocaine that Garcia had received but for which he had not paid. Garcia and his operation began hiding from Robles, while Robles and his organization began looking for Garcia.

Shortly after Garcia's dispute with Robles began, Garcia had a disagreement with Ernesto Herrera-Castro (Tito), one of Garcia's workers. Tito continued to work

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

[2]In the fall of 2009, Garcia moved his operation to Sioux City, Iowa, days before his home in Omaha was raided by police.

for Garcia, but unbeknownst to Garcia, began communicating with Robles about Garcia's whereabouts. In December of 2009, Tito arranged for another member of Garcia's group, Raul Tapia-Marroquin, to meet Tito to buy methamphetamine. Tito took Tapia to a motel and Tito, Robles, and an unidentified third person bound Tapia and held him against his will. Robles put a gun into Tapia's mouth and threatened to "blow [his] brains out" if he would not reveal Garcia's exact location. Tapia was held for several hours while Robles searched his home. Robles informed Tapia that Tapia would be forced to remain with Robles until Robles located Garcia. Fortunately, Tapia was able to escape.

Immediately after the kidnapping, Garcia and his workers—alerted that Robles had located them, unwilling to pay back the $100,000, and afraid of what Robles would do to them—again relocated their operation, this time to Minneapolis, Minnesota. There, Garcia and his associates rented homes and placed 13 kilograms of methamphetamine in a rented storage locker.

### B. Rodriguez

In 2009, Garcia paid to have appellant Rodriguez smuggled into the United States from Mexico to help with Garcia's drug conspiracy. Rodriguez then worked with Garcia in Omaha, Sioux City, and Minneapolis. Rodriguez conducted several drug deals for Garcia; supplied an underage member of Garcia's organization with a handgun; lived in and had keys to the main house used by Garcia's operation to store and package drugs in Sioux City; and lived in a house paid for by Garcia in Minneapolis. Rodriguez helped Garcia unload the 13 kilograms of methamphetamine into the storage locker in Minneapolis and was with Garcia at the time of their arrests.

### II. Robles

Robles appeals his conviction on grounds of sufficiency of the evidence and ineffective assistance of counsel. He also argues that the trial judge considered

unreliable information to support his sentence, that the judge erred in applying the leader-organizer enhancement, and that his sentence violates the Eighth Amendment guarantee against cruel and unusual punishment.

## A. *Sufficiency of the Evidence*

Robles contends the evidence at trial was insufficient to support his conviction for the drug conspiracy and argues that the district court should have granted his motion for acquittal under Federal Rule of Criminal Procedure 29(a). We review the denial of a motion for a judgment of acquittal de novo. United States v. Janis, 556 F.3d 894, 897 (8th Cir. 2009).

"Where a party challenges the evidence underlying his conviction, the standard of review is very strict, and the jury's verdict is not to be lightly overturned. We view the evidence in the light most favorable to the government, and we resolve any evidentiary conflicts in the government's favor." United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004) (internal citations omitted).

To convict a defendant on a conspiracy charge, the Government must prove that "1) an agreement existed among two or more people to accomplish an illegal purpose, 2) the defendant knew of the conspiracy, and 3) the defendant knowingly joined and participated in the conspiracy." Id. at 961. The Government is not required to prove that a defendant expressly agreed to join a conspiracy; a tacit agreement by the defendant is sufficient. Id. "The elements of conspiracy may be proved by direct or circumstantial evidence, and the jury may draw reasonable inferences from the evidence presented about what the defendant's state of mind was when he did or said the things presented in the evidence." United States v. Cervantes, 646 F.3d 1054, 1059 (8th Cir. 2011) (quoting United States v. Chavez-Alvarez, 594 F.3d 1062, 1067 (8th Cir. 2010)).

-4-

Robles contends there was insufficient evidence to support the charge of conspiracy to distribute five or more grams of cocaine, arguing the witnesses' testimony was not credible and that the testimony failed to establish Robles intentionally and knowingly entered into a conspiracy.

Garcia testified at trial that Robles was his supplier of eight kilograms of cocaine and testified the two had an agreement to divide the profits of Garcia's sales. Ivan Rodriguez, another member of Garcia's organization, also testified that Robles was the supplier of the cocaine distributed by the organization.

Robles contests the sufficiency of this evidence, arguing that Ivan Rodriguez and Garcia were not credible witnesses because they testified against him in hopes of gaining lighter sentences for themselves. At trial, defense attorneys questioned the witnesses at length about their possible biases and motives for testifying. The jury was well aware the witnesses were coconspirators and hoped for lighter sentences in exchange for testifying against Robles. However, the jury was entitled to credit those witnesses over Robles's defense. "The jury is the final arbiter of the witnesses' credibility, and we will not disturb that assessment." Hayes, 391 F.3d at 961.

Additionally, Robles argues Garcia's and Ivan Rodriguez's testimony failed to show that Robles had knowingly and intentionally joined the conspiracy. To convict a defendant of a conspiracy to distribute cocaine, the Government must prove "that a conspiracy to distribute cocaine existed, that [Robles] knew of the conspiracy, and that [Robles] intentionally joined the conspiracy." United States v. Huggans, 650 F.3d 1210, 1222 (8th Cir. 2011) (quoting United States v. Williams, 534 F.3d 980, 985 (8th Cir. 2008)). As stated, Garcia's and Rodriguez's testimony was sufficient to establish the existence of the conspiracy. Additionally, we have found that a defendant's repeated supply of large amounts of cocaine to a cocaine conspiracy is not a typical buyer-seller relationship but instead is indicative of knowledge and intent to join a conspiracy because of the quantity and regularity of the transactions. Id. at 1222-23.

Garcia testified that Robles supplied him with multiple shipments of cocaine, totaling eight kilograms, over the course of the conspiracy. Garcia also testified that he and Robles had an agreement to split the profits from the cocaine sales. This was sufficient to establish Robles's knowledge of and intent to join the conspiracy.

Similarly, there was also sufficient evidence to support the separate charge that Robles was involved in a conspiracy to distribute less than 50 grams of methamphetamine mixture. Though Robles contends he supplied only cocaine to the conspiracy, Robles's involvement with only one drug in the conspiracy does not absolve him from responsibility for the other drugs that the conspiracy sold. See United States v. Donnell, 596 F.3d 913, 924 (8th Cir. 2010), cert. denied, Donnell v. United States, 131 S. Ct. 994 (2011). In Donnell, a defendant was charged with being a member of a conspiracy to distribute four types of drugs, though his involvement with the conspiracy was limited to a single drug, ecstasy. Id. at 923-24. The defendant argued there were multiple conspiracies at play and that the evidence failed to show that he had knowingly and intentionally joined the overarching conspiracy to sell multiple drugs. Id. Rather, he argued he was involved in a smaller conspiracy to distribute ecstasy only. Id. We noted the evidence was sufficient to show the defendant had knowingly engaged in a conspiracy to sell ecstasy and found a reasonable jury could have concluded this conspiracy was the same conspiracy that distributed the other drugs. Id. at 924. We stated "a conspiracy with multiple objectives is not the same thing as multiple conspiracies." Id. (quoting United States. v. Santisteban, 501 F.3d 873, 882 (8th Cir. 2007)). "One conspiracy may exist despite the involvement of multiple groups and the performance of separate acts." United States v. Riebold, 135 F.3d 1226, 1230 (8th Cir. 1998) (quoting United States v. Dijan, 37 F.3d 398, 402 (8th Cir. 1994)).

The evidence at trial showed that Robles had entered a conspiracy with Garcia to distribute cocaine. There was sufficient evidence from which a reasonable jury could have concluded that this was part of a larger conspiracy that also distributed

-6-

methamphetamine. Members of the conspiracy testified that the conspiracy distributed both cocaine and methamphetamine. Additionally, Robles was interconnected with many of the men who sold both cocaine and methamphetamine. Detective John Guerrero testified that at the time of Robles's arrest, Robles was in possession of one ounce of methamphetamine, which he admitted belonged to him. Guerrero testified that in his expert opinion, one ounce was an amount associated with distribution, rather than with use. The jury could have reasonably concluded that Robles's possession of distribution quantities of methamphetamine indicated his involvement in the distribution ring was not limited to the organization's cocaine distribution. See United States v. Rolon-Ramos, 502 F.3d 750, 754 (8th Cir. 2007) (finding a defendant's possession of small amounts of methamphetamine coupled with other evidence of his connection with the conspiracy to distribute methamphetamine was sufficient to find that the defendant had conspired to distribute methamphetamine). Based on the evidence presented at trial, the jury could reasonably have inferred that the conspiracy between Garcia and Robles to distribute cocaine was part of a larger conspiracy with multiple objectives, including the distribution of methamphetamine.

For these reasons, we conclude that there was sufficient evidence to support Robles's conviction for conspiring to distribute less than 50 grams of methamphetamine mixture.

Additionally, there was sufficient evidence to support Robles's conviction for conspiracy to distribute greater than 50 grams of methamphetamine actual. The overwhelming evidence at trial indicated that members of Garcia's conspiracy placed 13 kilograms of pure methamphetamine in a storage locker. Although this methamphetamine was placed in the locker after Garcia's dispute with Robles began, a member of a drug conspiracy is responsible for all reasonably foreseeable actions

of a conspiracy unless he withdraws from the conspiracy.[3]  See Pinkerton v. United States, 328 U.S. 640, 647-48 (1946).  Robles's dispute with Garcia was not an effective withdrawal.  To withdraw from a conspiracy, a conspirator must either make "a clean breast to the government or else communicate[] the fact of withdrawal to his co-conspirators in a manner reasonably calculated to reach them."  United States v. Elk, 548 F.3d 641, 673 (8th Cir. 2008).  "[M]ere cessation of unlawful participation is not enough" to constitute a withdrawal.  Id. at 676 (8th Cir. 2008).  Similarly, a souring of a relationship between a defendant and his coconspirators resulting in an end of the defendant's business relationship with the conspiracy is insufficient to establish a withdrawal from the conspiracy.  United States v. Jackson, 345 F.3d 638, 648-49.

At the time the methamphetamine was placed in the storage locker, Robles had not withdrawn from and was still engaged in and attempting to profit from the conspiracy.[4]  Robles had not informed police of the conspiracy.  Additionally, he had

---

[3]A defendant is responsible for the quantity of drugs involved in a conspiracy when that quantity is reasonably foreseeable to the defendant, and a defendant's role in the conspiracy is relevant for determining what should be foreseeable to the defendant.  See  United States v. Ramon-Rodriguez, 492 F.3d 930, 942 (8th Cir. 2007).  Where a defendant holds "a position within the conspiracy with adequate exposure to information about the conspiracy," the potential of the conspiracy is more foreseeable to him than it would be to a "one-time mule [or] an ignorant patsy."  See id.  Robles played a significant role in the conspiracy, originally had a close relationship with Garcia, and supplied the conspiracy with large amounts of cocaine.  Robles was in a position of authority in the conspiracy that allowed him to be aware of the large amounts of drugs distributed by the conspiracy.  A reasonable jury could have found that it should have been foreseeable to Robles that a conspiracy that distributed large quantities of drugs would continue to acquire and distribute large amounts of drugs.

[4]We note that on appeal, Robles does not challenge the district court's consideration of the 50 grams of methamphetamine as relevant conduct at sentencing, rather, he challenges only the sufficiency of the evidence at the trial stage.

not informed Garcia of his intent to withdraw from the conspiracy. Instead, Robles was actively pursuing Garcia to recover the $100,000 in drug money owed to him. Thus, Robles is accountable for the methamphetamine found in the storage locker because it was placed there in the course of a conspiracy of which Robles was a member and from which he had not withdrawn.

For these reasons, the evidence was sufficient to support the jury's verdict, and the court did not err in denying Robles's request for an acquittal under Federal Rule of Civil Procedure 29(a).

### B. Reliability of the Evidence Considered at Sentencing

Next, Robles argues that the district court erred at sentencing when it considered testimony that he had worked as a Mexican police officer and that indicated the existence of outstanding warrants for his arrest in Mexico. Robles argues the testimony constituted unreliable evidence.

Sentencing courts have "wide discretion at sentencing as to the kind of information considered or its source." United States v. Pratt, 553 F.3d 1165, 1170 (8th Cir. 2009). A court may consider all relevant evidence at sentencing, regardless of its admissibility under the rules of evidence, provided that the evidence has "sufficient indicia of reliability." United States v. Ortiz, 636 F.3d 389, 393 (8th Cir. 2011). The evidence need not be limited to evidence relating to the scope of the crimes charged and may include "uncorroborated hearsay, provided the defendant is given a chance to rebut or explain it." United States v. Pratt, 553 F.3d at 1170 (quoting United States v. Atkins, 250 F.3d 1203, 1213 (8th Cir. 2001)). "[T]he sentencing process does not carry the same evidentiary protections guaranteed during a criminal trial." Id. (quoting United States v. Agboola, 417 F.3d 86, 865 (8th Cir. 2005)).

At sentencing, Robert Hansen, a member of the Tri-State Drug Task Force unit of the Drug Enforcement Administration (DEA), testified that he had spoken with a DEA agent in Mexico who informed him that Robles had worked as a Mexican police officer. Additionally, the officer testified the agent told him that warrants had been issued for Robles's arrest in Mexico, though he was unaware of whether any action had been taken on the warrants or if they were still outstanding.

This hearsay evidence had sufficient indicia of reliability, and Robles had the opportunity to rebut the same. Accordingly, we conclude that the court did not err in considering Detective Hansen's testimony.

### C. Enhancement for Leadership Role in the Kidnapping

Robles was given a four-step enhancement to his offense level for being the leader or organizer of a criminal activity based on his involvement in Tapia's kidnapping. See United States Sentencing Commission, Guidelines Manual, §3B1.1. Robles does not contest that the kidnapping was a qualifying activity for the four-level enhancement but argues that there was insufficient evidence to show that he was the leader or organizer of the kidnapping.

"A leadership enhancement is warranted when an individual organizes or directs the participation of another and is reviewed for clear error." United States v. Van Chase, 137 F.3d 579, 583 (8th Cir. 1998) (internal citation omitted). To warrant the enhancement, "the defendant need only to have directed one other participant." United States v. Sarabia-Martinez, 276 F.3d 447, 451 (8th Cir. 2008). The Government need only prove by a preponderance of the evidence that the leader-organizer enhancement is appropriate. United States v. Garcia-Hernandez, 530 F.3d 657, 665 (8th Cir. 2007).

The evidence presented at trial was sufficient to support the judge's finding that Robles was a leader or organizer in the kidnapping. Garcia testified that Tito

monitored Garcia's and Tapia's actions and reported their location back to Robles in order to enable Robles to effectuate Tapia's kidnapping.[5] Robles supervised at least one person when he directed Tito to inform Robles of Garcia's whereabouts. Thus, the district court appropriately assessed the leadership enhancement.[6]

The district court did not err in applying the enhancement.

*D. Robles's Remaining Issues*

Robles also argues that his conviction should be reversed based on ineffective assistance of counsel. Specifically, he alleges his counsel erred in failing to pursue the possibility of juror misconduct and in failing to challenge the admissibility of evidence that Garcia sought the help of an alleged Mexican witch to protect him from Robles.

"[G]enerally, ineffective assistance of counsel claims are better left for post-conviction proceedings" under 28 U.S.C. § 2255. United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting United States v. Cook, 356 F.3d 913, 919 (8th Cir.

---

[5]The hearsay evidence was admitted under the coconspirator exception found at Rule 801(d)(2)(E) of the Federal Rules of Evidence.

[6]An increased sentence for a defendant may also be appropriate where the defendant had "management responsibility over the . . . criminal organization." See USSG §3B1.1, comment (n.4). In addition to Robles's supervision of Tito, Robles's management of Tapia's kidnapping was extensive. The evidence indicated that Robles was the instigator of the kidnapping, which he engineered to force Garcia to pay back the $100,000 owed to Robles. Additionally, Robles played a major part in the actual commission of the kidnapping. Tapia testified at trial that Robles told Tapia during the kidnapping that Robles would kill Tapia if he did not lead Robles to Garcia. Tapia also testified Robles was the person who blocked his escape and bound him during the kidnapping, and that Robles put a gun in Tapia's mouth during the kidnapping while threatening to kill him.

-11-

2004)). We will not hear ineffective assistance claims on direct appeal unless the record is fully developed and our failure to act would be a "plain miscarriage of justice" or the counsel's errors are "readily apparent." See Orr, 636 F.3d 944, 950 (8th Cir. 2011); United States v. Ramirez-Hernandez, 449 F.3d 824, 827 (8th Cir. 2006).

The record is devoid of facts needed to enable the court to evaluate Robles's claim against his attorney. To properly evaluate Robles's claim that his attorney erred in failing to contest the possible juror misconduct and in failing to object to Garcia's witch-related testimony, we would need to hear testimony from the attorney explaining his decision not to pursue those issues. The attorney's failure to pursue the issues may very well have been correct, as pursuing them may have been frivolous and possibly detrimental to the defense strategy. We need further information to determine whether the attorney erred in failing to pursue the issues and whether that failure was prejudicial to Robles. Where the evaluation of an ineffective assistance claim requires development of facts outside the record, those claims are not appropriately considered on direct appeal. United States v. Looking Cloud, 419 F.3d 781, 788-89 (8th Cir. 2005). Because we would have to look outside the record to evaluate Robles's claims, we cannot appropriately consider it on appeal.

Additionally, Robles argues that his two concurrent sentences of 600 months imprisonment are cruel and unusual punishment under the Eighth Amendment.

"It is exceedingly rare for an offense that does not have a capital sentence to violate the Eighth Amendment, which forbids only extreme sentences that are grossly disproportionate to the crime." Murphy v. King, 652 F.3d 845, 849 (8th Cir. 2011) (quoting United States v. Wiest, 596 F.3d 906, 911 (8th Cir. 2010)). In evaluating whether a sentence violates the Eighth Amendment, we "address the gravity of the offense compared to the harshness of the penalty." United States v. Paton, 535 F.3d 829, 837 (8th Cir. 2008) (quoting United States v. Weis, 487 F.3d 1148, 1154 (8th

-12-

Cir. 2007)). The Supreme Court has found that a state may enforce a punishment of life imprisonment for possession of 650 grams of cocaine with intent to distribute without violating the Eighth Amendment. Harmelin v. Michigan, 501 U.S. 957, 988 (1991). Certainly then, a sentence of 600 months for Robles's possession of five kilograms of cocaine does not violate the Eighth Amendment. Additionally,"[a] sentence within statutory limits is generally not subject to review under the Eighth Amendment." United States v. Murphy, 899 F.2d 714, 719 (8th Cir. 1990). Robles was convicted of conspiring to distribute over 5 kilograms of cocaine and over 50 grams of methamphetamine under 21 U.S.C. § 841. The applicable portion of the statute provides for punishment between ten years and life imprisonment. See 21 U.S.C. § 841 (b)(1)(A). The kidnapping statute under which Robles was convicted, 18 U.S.C. § 1201, allows for punishment of up to life imprisonment. Robles's two 600 month terms were well within the punishments prescribed by statute. For these reasons, we conclude Robles's sentence is not grossly disproportionate to the crimes he committed.

## III. Rodriguez

Rodriguez argues that the district court erred in not entering a role reduction at sentencing to reflect Rodriguez's minor role in the drug conspiracy. See USSG §3B1.2. Rodriguez's argument is based on his contention that he is a simple, uneducated individual who cannot read, write, or speak English and was unable to comprehend the full extent of the drug conspiracy. Additionally, Rodriguez introduced evidence that he frequently could not find his way home from car trips alone and could not be relied upon by Garcia to deliver drugs. Finally, Rodriguez argues he was clearly less culpable than other participants of the conspiracy.

We review the district court's denial of the role reduction for clear error. United States v. Camacho, 348 F.3d 696, 700 (8th Cir. 2003).

"The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." United States v. Bradley, 643 F.3d 1121, 1129 (8th Cir. 2011) (quoting United States v. Morales, 445 F.3d 1081, 1085 (8th Cir. 2006)). However, though relative culpability of conspirators is relevant to the minor participant determination, "our cases make it clear that merely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was 'deeply involved' in the offense." United States v. Bush, 352 F.3d 1177, 1182 (8th Cir. 2003). Rather, "[t]o prove entitlement to the adjustment, the defendant must prove he or she is [a] minor participant by comparison with other participants and by comparison with the offense for which he or she was held accountable." Id. (emphasis added).

The evidence presented at trial shows that Rodriguez was deeply involved in the conspiracy. Manuel Sanchez testified that when he sold drugs, he gave the money for the drugs to Rodriguez and that it was Rodriguez who instructed him to carry a gun. Further, Sanchez stated that the drugs he sold were supplied to him by Tapia, whose supplier was Rodriguez, indicating Rodriguez was higher up in the conspiracy chain than at least two other members of the conspiracy. Rodriguez lived in the main drug house used by the conspiracy in Sioux City, and Garcia testified that Rodriguez helped him move and unload the 13 kilograms of methamphetamine to the storage locker in Minneapolis. When arrested, Rodriguez was in a car with Garcia. When Sanchez was asked whether Sanchez participated in the processing of drugs, he answered negatively and stated Rodriguez was in charge of that. This testimony indicated that Rodriguez was deeply involved in the conspiracy and was at least as culpable, and likely more culpable, than many of his coconspirators.

Though Rodriguez argues the district court failed to properly consider his lack of education and other mitigating factors, those factors are not relevant to the minor

role reduction; the propriety of awarding a minor role reduction rests on culpability alone.  <u>See</u> <u>Bradley</u>, 643 F.3d at 1129.  The district court considered the mitigating and aggravating factors under 18 U.S.C. § 3553 but correctly considered only Rodriguez's culpability in determining whether the role reduction was warranted.

## IV.  Conclusion

We affirm Robles's conviction and sentence and affirm Rodriguez's sentence.

_____