# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2716

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Corey Terrell Barnes, | * | |
| | * | |
| Appellant. | * | |

_____

No. 11-3083

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | [UNPUBLISHED] |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Markeeta Wesley, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 14, 2012
Filed: July 16, 2012

_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

_____

PER CURIAM.

Corey Terrell Barnes and Markeeta Wesley pled guilty to conspiracy to pass counterfeit currency, in violation of 18 U.S.C. §§ 371 and 472. Barnes also pled guilty to one substantive count of passing counterfeit currency, in violation of 18 U.S.C. § 472. Both appeal their sentences. We affirm.

I.

Barnes and Wesley participated in a conspiracy to pass counterfeit currency between January 2009 and July 2010. Barnes and another codefendant manufactured the currency. Then Wesley, Barnes, and others would use the counterfeit currency to purchase items, primarily at Target stores, and later return the items to different stores in exchange for legitimate currency. Members of the conspiracy defrauded Target of approximately $95,000 during the course of the conspiracy.

Barnes pled guilty to one count of conspiracy and one count of passing counterfeit currency. Prior to sentencing, Barnes argued that his offense level was sixteen, while the government argued that Barnes should be subject to a four-level enhancement for his role as a leader and organizer of the conspiracy, resulting in an offense level of twenty. The presentence investigation report (PSR) recommended against the enhancement. The district court[1] determined that Barnes's total offense level was sixteen, that his criminal history category was VI, and that the resulting United States Sentencing Guidelines (Guidelines) advisory range was forty-six to fifty-seven months' imprisonment.

At sentencing, Barnes argued that his plans for a productive life after prison should militate against a heavy sentence. He said that he was writing a book and had

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

a book deal, planned to obtain a barber's certificate, and wanted to reach out to youth in his community so that they would not do what he had done.

The district court sentenced Barnes to fifty-seven months' imprisonment, to be served consecutively with Barnes's undischarged term of imprisonment for a separate offense. In sentencing Barnes, the court observed, "[t]he most striking thing about Mr. Barnes is his extensive criminal record." Barnes Sentencing Tr. 18. The court explained that "it may not be possible to deter Mr. Barnes from committing crimes in the future . . . the evidence is overwhelming that Mr. Barnes is likely to return to committing crimes soon after he is released from prison. Thus, a long sentence is necessary to protect the public from him." Id. at 18-19.

Wesley pled guilty to one count of conspiring to pass counterfeit currency. In the plea agreement, Wesley and the government agreed that her base offense level was nine, that there should be an eight-level increase due to the amount of loss, and that Wesley was entitled to an offense-level reduction for acceptance of responsibility. Wesley reserved the right to argue for a "minor" (two-level) or "minimal" (four-level) role reduction. See U.S.S.G. § 3B1.2. Wesley's PSR recommended that she be treated as a minor participant in the conspiracy. At sentencing, Wesley argued that she should be treated as a minimal participant, entitled to a four-level reduction, because she did not manufacture the currency and because she passed only $7,000 of the counterfeit currency.

The district court ruled that Wesley was not entitled to either mitigating role reduction. It found that although Wesley did not participate in the manufacturing aspect of the conspiracy, she was nonetheless "deeply involved" and played an "indispensable role." Wesley Sentencing Tr. 15. The court acknowledged that Wesley may not have known "every one of the details of the day-to-day operations of the conspiracy," but found that she "understood the general scope and structure of the conspiracy." Id. at 15-16. The district court remarked that passing counterfeit

currency was not something that Wesley did once or twice, but repeatedly. Id. at 15. The district court cited United States v. Goebel, 898 F.2d 675, 678 (8th Cir. 1990), for the proposition that distribution is equally as important as manufacturing in a counterfeiting scheme. Wesley Sentencing Tr. at 16. Finally, the court noted that the Guidelines already account for the difference between a participant who manufactured currency and one who did not, and Wesley's offense level was not increased under Guidelines section 2B5.1(b)(2) (providing for a two-level increase for manufacturing counterfeit currency).

Having determined that Wesley's offense level was fourteen and her criminal history category was VI, resulting in an applicable Guidelines range of thirty-seven to forty-six months' imprisonment, the district court sentenced Wesley to thirty-seven months' imprisonment.

## II.

### A. Appellant Barnes

Barnes contends that his sentence is substantively unreasonable because it is greater than necessary to achieve the goals of sentencing outlined in 18 U.S.C. § 3553(a). We review the substantive reasonableness of the sentence under an abuse of discretion standard, considering the totality of the circumstances. Gall v. United States, 552 U.S. 38, 51 (2007). "On review, sentences within the advisory Guidelines range . . . are presumptively reasonable." United States v. Bordeaux, 674 F.3d 1006, 1011 (8th Cir. 2012) (quoting United States v. Solis-Bermudez, 501 F.3d 882, 884 (8th Cir. 2007)).

Barnes has not rebutted the presumption of reasonableness attached to his Guidelines sentence. "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as

substantively unreasonable." United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quoting United States v. Gardellini, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). The sentencing transcript shows that the district court was well aware of Barnes's post-imprisonment plans, having considered Barnes's position paper, a letter that he wrote to the court, his counsel's arguments at sentencing, and Barnes's allocution. The court also stated that it had considered each of the 18 U.S.C. § 3553(a) factors and explained that the fifty-seven month sentence was to deter Barnes, if possible, from committing future crimes and to protect the public from him. In light of the seriousness of Barnes's offense and his extensive criminal history, the district court did not abuse its discretion in sentencing Barnes to a Guidelines sentence at the top of the applicable range.

B. Appellant Wesley

Wesley argues that the district court erred in denying the two-level reduction in offense level for her role as a minor participant. On appeal, she does not claim to be entitled to the reduction for a minimal participant. "We review the district court's refusal to grant a minor role adjustment for clear error." United States v. Bowie, 618 F.3d 802, 818 (8th Cir. 2010) (quoting United States v. Price, 542 F.3d 617, 622 (8th Cir. 2008)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Goebel, 898 F.2d at 678 (quoting United States v. Williams, 890 F.2d 102, 104 (8th Cir. 1989) (per curiam)).

"The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." United States v. Rodriguez-Ramos, 663 F.3d 356, 366 (8th Cir. 2011) (quoting United States v. Bradley, 643 F.3d 1121, 1129 (8th Cir. 2011)). Although "relative culpability of conspirators is relevant to the

minor participant determination, our cases make it clear that merely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was deeply involved in the offense." Id. at 366-67 (internal quotation marks omitted) (quoting United States v. Bush, 352 F.3d 1177, 1182 (8th Cir. 2003)).

The district court did not clearly err in refusing to grant Wesley a minor role adjustment. As we stated in Goebel, "[w]e do not believe, as a general matter, that a distributor is less culpable than a manufacturer; adequate distribution is as essential to a counterfeiting scheme as is efficient production." 898 F.2d at 678. Wesley contends that the district court incorrectly interpreted Goebel to mean that no defendant involved in the passing of counterfeit bills could ever be found to be a minor participant. In fact, the district court said no such thing. It reasoned that it applies minor role reductions in drug conspiracies only to someone who was involved in "a one time, one place" type of transaction. Wesley Sentencing Tr. 11. In contrast, Wesley repeatedly engaged in criminal conduct over the course of the conspiracy. She passed counterfeit bills routinely. The district court said nothing to suggest that a distributor of counterfeit bills could never be a minor participant; it simply found that Wesley was not.

We are similarly unpersuaded by Wesley's argument that she is entitled to a minor role reduction because she personally passed only $7,000 of counterfeit currency in a scheme that totaled $95,000 in losses. In a conspiracy for the purpose of distributing any sort of contraband, be it weapons, drugs, or counterfeit currency, many participants will be able to point to a co-conspirator who distributed a greater amount. Although the amount distributed may be relevant to determining whether a role reduction is warranted, it does not follow that a district court clearly errs when, after considering the amount distributed in the context of the evidence and determining that the defendant was deeply involved in the conspiracy, it finds that a minor role adjustment is not warranted.

## III.

The sentences are affirmed.

_____